IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| HARRIET DELORES CLEVELAND, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:13cv732-MHT |
| | ) | (WO) |
| CITY OF MONTGOMERY and | ) | |
| THE HONORABLE MILTON J. | ) | |
| WESTRY, | ) | |
| | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| MARKIS ANTWUAN WATTS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:13cv733-MHT |
| | ) | (WO) |
| CITY OF MONTGOMERY, THE | ) | |
| HONORABLE MILTON J. | ) | |
| WESTRY, and THE HONORABLE | ) | |
| LES HAYES III, | ) | |
| | ) | |
|     Defendants. | ) | |

<u>OPINION</u>

       "Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal."

<u>Griffin v. Illinois</u>, 351 U.S. 12, 16, (1956).

Plaintiffs Harriet Delores Cleveland and Martin Antwuan Watts bring these consolidated federal cases against defendants City of Montgomery and two of the City's municipal judges, claiming that they were thrown in jail for being too poor to pay parking tickets in violation of their rights to counsel, equal protection, and due process under the following federal and state laws: the Sixth and Fourteenth Amendments of the United States Constitution; Article I, §§ 1, 6, and 22 of the Alabama Constitution; and the Alabama Rules of Criminal Procedure. Subject-matter jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (civil rights), and 1367 (supplemental). These cases are before this federal court on the parties' joint motion for entry of agreed settlement order. The motion will be granted.

## I. BACKGROUND

Cleveland and Watts allege that they were unconstitutionally jailed because they were too poor to

2

pay Montgomery city traffic-ticket fines and associated court costs. Although the facts remain disputed, to give background for the settlement the court briefly reviews them as alleged by Cleveland and Watts.

Cleveland alleges that, over a period of five years, she received a number of traffic tickets that she could not afford to pay. The first tickets were for a lack of car insurance. Over a two-year span, police set up roadblocks in her West Montgomery neighborhood, and she was ticketed each time she could not present proof of insurance. Because she could not afford to pay these tickets, the City of Montgomery suspended her license. Nevertheless, she continued driving to work and her child's school, and she eventually received additional tickets for driving without a license. She remained unable to pay the fines owed, and, in August 2013, her outstanding fines

were converted into a term of imprisonment in the Montgomery Municipal Jail.[1]

Similarly, Watts alleges that he was taken into custody to serve a 54-day sentence based solely on his inability to pay a traffic ticket when he appeared before the Montgomery Municipal Court regarding an unrelated misdemeanor charge. Although the court dismissed the misdemeanor, it learned that Watts had outstanding traffic fines. The court gave him two options: either pay or face jail time. After he stated that he could not afford to pay the outstanding fines, the court sentenced him to jail.

In August 2013, while still in custody in the Montgomery Municipal Jail, Cleveland and Watts each brought suit individually in state court. Following removal to this federal court, the cases were

---

1. Cleveland also alleges that she was jailed at least twice prior to 2013 due to her inability to pay the traffic tickets she received during 2008 and 2009. Little information was provided, however, regarding those periods of incarceration or the municipal-court proceedings that produced them.

consolidated.   Cleveland and Watts sought declaratory and injunctive relief.   The City and the other defendants agreed to a stay of the municipal-court orders of incarceration and the collection of outstanding debts pending discovery in this matter.

During discovery, another federal case, Mitchell v. City of Montgomery, No. 2:14cv186-MHT, was filed.   The facts in Mitchell are analogous, and the Mitchell plaintiffs raise substantially similar claims.   The Mitchell court, however, entered a preliminary injunction.   As part of the injunction, the City of Montgomery was ordered to submit a comprehensive set of proposed judicial procedures that it would implement for the collection of fines going forward.   While Cleveland's and Watts's cases have been litigated separately from Mitchell, this court allowed Cleveland and Watts to participate in the briefing and proposed hearing regarding the proposed judicial procedures.

All parties then decided to engage in private mediation to develop agreed-upon procedures that would

5

facially satisfy federal and state-law requirements. The parties now contend that the resulting proposed procedures establish a scheme whereby indigent defendants will not be "incarcerated for [their] inability to pay fine[s] or court costs or restitution." Ala. R. Crim. P. 26.11(i)(2). The procedures are guided by four key components: access to counsel, notification forms, "indigence/ability-to-pay" hearings, and express judicial findings.

Under the proposed judicial procedures, a debtor who does not otherwise have counsel is to be represented by a public defender at all compliance and indigence/ability-to-pay hearings. A public defender will also be available to a debtor who needs assistance completing an affidavit of substantial hardship and related documentation prior to hearings. Lastly, public defenders are instructed to inform any debtor who is ultimately subject to imprisonment of her appellate rights.

If a debtor is unable to pay her fine, she will be notified of her right to a public defender, the date of her compliance hearing, and her right to present evidence of financial hardship through a set of forms: Form One ("Payment of Fines and Costs") and Form Two ("Order Setting Hearing for Compliance Review"). The forms notify the debtor that an individual "cannot be put in jail solely for [her] inability to pay ... fines and costs" absent a finding of willful non-payment. The forms go on to indicate how a debtor would begin establishing inability to pay at her first compliance hearing.

During a debtor's first compliance hearing--scheduled for all debtors who do not pay their fines and costs in full at their first appearance--the debtor must be given the opportunity to dispute the amount allegedly owed. Additionally, the municipal-court judge is required to ask why the debtor has failed to pay in full, specifically asking whether the debtor "is able to pay [that day]." If, in

response to the municipal court's inquiry, the debtor indicates that she is unable to pay, the court will direct the debtor to a public defender and schedule an indigence/ability-to-pay hearing.  Even if the debtor does not indicate an inability to pay, the court is prohibited from converting the debtor's fines into a prison sentence without first conducting an indigence/ability-to-pay hearing.

At an indigence/ability-to-pay hearing, the court is required to make an express indigence/ability-to-pay determination, taking into account testimony, the debtor's affidavit of substantial hardship, any other documents submitted by the debtor, and any additional information the court deems necessary.  If, after questioning and the presentation of evidence, the court determines that the debtor is at or below 125 % of the federal poverty level, the debtor will be presumed indigent and unable to pay the fines, court costs, and restitution previously levied, unless the debtor is found to have substantial liquid assets with which to

pay the obligations.  If the debtor is found to be above 125 % of the federal poverty level, no such presumption of indigence will attach;  the debtor will, however, still be afforded an opportunity to show the court that she is unable to pay, taking into consideration disposable income, liquid assets, and earning potential.

If, following the hearing, the debtor is determined to be indigent or otherwise unable to pay, the court will have the option of proposing a new payment plan guided by the debtor's available financial resources, remitting the fines and costs, or ordering any other remedy deemed just and appropriate other than incarceration.  Additionally, the court is required to provide the debtor the option of completing community service in lieu of making monetary payments.  The court will be able to order the debtor to serve jail time only if the hearing results in an express finding of willful non-payment, that is, the debtor refuses to pay despite having the ability to pay.

## II. JOINT MOTION FOR ENTRY OF
## AGREED SETTLEMENT ORDER

The parties have submitted to this federal court the proposed judicial procedures as an exhibit to their joint motion for entry of agreed settlement order. In the joint motion, they request that the court issue certain declarations under 28 U.S.C. § 2201 addressing the proposed judicial procedures' facial compliance with applicable federal and state law.

For each of these requested declarations, the court will now determine whether the proposed judicial procedures facially comply with federal and state law. It need not--and will not--determine whether the new procedures represent the minimum requirements under federal and state constitutional law or, instead, go beyond what is required.

### A.   Declaration 1

The parties ask this federal court to declare that, under the current status of the law, the constitutional

10

principles set out in Bearden v. Georgia, 461 U.S. 660 (1983), regarding incarceration for non-payment, and Turner v. Rogers, --- U.S. ---, 131 S. Ct. 2507 (2011), regarding notice, apply in municipal-court proceedings, and that, to the extent applicable in a particular case, the judges of the Montgomery Municipal Court are legally required to follow them.

It is uncontroverted that these cases apply to municipal-court proceedings. Both cases addressed state judicial proceedings, see Bearden, 461 U.S. at 662 (addressing Georgia state courts); Turner, --- U.S. at ---, 131 S. Ct. at 2512 (addressing South Carolina family court), and "[m]unicipalities are but subordinate departments of state government." Alexander v. State ex rel. Carver, 274 Ala. 441, 443 (1963); see also Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 662 (2009) ("Political subdivisions of States ... are [] subordinate governmental instrumentalities created by the State."). As such, judges in municipal courts, like judges in state courts, must follow

<u>Bearden</u> and <u>Turner</u>, and the judges in the Montgomery Municipal Court are no exception.[2]

## B.  Declaration 2

The parties next request this federal court to declare that the proposed judicial procedures facially comply with the constitutional principles set out in <u>Bearden</u>, regarding incarceration for non-payment, and <u>Turner</u>, regarding notice.  In <u>Bearden</u>, the Supreme Court held that, under the Fourteenth Amendment's Due Process Clause and Equal Protection Clause, a trial court cannot "automatically revok[e] probation because [a] petitioner could not pay his fine, without

---

2.  The parties' proposed order for declaratory relief specifically requests that "to the extent applicable in a particular case, the judges of the Montgomery Municipal Court are legally required to follow" <u>Bearden</u> and <u>Turner</u>. Am. Joint Mot. for Entry of Agreed Settlement: Proposed Order (Doc. No. 56-3) (emphasis added). This court reads the "extent applicable" phrase to mean only that the municipal judges are bound by these Supreme Court cases whenever an issue before the municipal court implicates them rather than implying exceptions for municipal judges in certain cases.

determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist." 461 U.S. at 662.

This holding breaks down into a three-part process. First, a court must ask why a person could not pay a fine. Id. at 672. Second, if the person has the resources and willfully refuses to pay, the court may imprison her; if she does not have the resources, the court must ask whether she made bona-fide efforts to obtain the resources. Id. Last, if she made bona-fide efforts, the court must consider if there are adequate alternative measures--such as giving more time to pay the fine, reducing the fine, or requiring labor or public service in lieu of the fine--that could satisfy the State's interest in punishment and deterrence. Id. at 672-673. "Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay." Id. at 672. Indeed, "[t]o do otherwise would deprive the

[debtor] of his constitutional freedom simply because, through no fault of his own, he cannot pay a fine." Id. at 672-73.

Turner expanded on Bearden by defining an indigent person's due-process rights under the Fourteenth Amendment when facing civil contempt. Turner, --- U.S. at ---, 131 S. Ct. at 2512. Although the Supreme Court found that a State did not have to provide counsel, drawing a distinction between civil- and criminal-contempt proceedings, it held that a State should provide "substitute procedural safeguards" that, when "employed together, can significantly reduce the risk of an erroneous deprivation of liberty." Id. at ---, 131 S. Ct. at 2519 (internal citation omitted). These safeguards could include "(1) notice to the defendant that his ability to pay is a critical issue in the contempt proceedings; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about

his financial status ... ; and (4) an express finding by the court that the defendant has the ability to pay." Id.

Here, the proposed judicial procedures facially comply with the constitutional requirements outlined in Bearden. Under Bearden, a court may imprison a debtor only upon a finding of willful non-payment or when, despite the debtor making a bona-fide effort to pay, "alternative measures [of punishment] are not adequate to meet the State's interests in punishment and deterrence." 461 U.S. at 672. The judicial procedures agreed to by the parties here conform to that standard, allowing a debtor to be imprisoned only if (1) the municipal court determines that the debtor had the ability to pay and (2) the court makes an express finding that the non-payment was willful.

Similarly, the proposed judicial procedures facially comply with the due-process requirements provided for in Turner. Although the Sixth Amendment does not provide debtors facing incarceration a right

to counsel during civil-contempt proceedings, the Due Process Clause does require several "substitute procedural safeguards" during these civil proceedings. Turner, --- U.S. at ---, 131 S. Ct. at 2519. The judicial procedures offered by the parties incorporate all of the procedural safeguards discussed in Turner. Under the procedures, debtors are notified that an individual cannot be incarcerated solely due to an inability to pay; the court utilizes a form to elicit debtors' financial information and debtors are afforded an opportunity to respond to questions regarding their financial capabilities; and the court is required to make an express finding regarding each debtor's ability to pay. The judicial procedures then go a step further to safeguard against the "erroneous deprivation of liberty" and provide for public-defender representation at all indigence/ability-to-pay hearings for debtors facing the possibility of incarceration following non-payment.

16

## C.   Declaration 3

Last, the parties request that this federal court declare that the proposed judicial procedures facially comply with the requirements of the Fourteenth and Sixth Amendments to the United States Constitution, §§ 1[3], 6[4], and 22[5] of the Alabama Constitution, and Rule 26.11 of the Alabama Rules of Criminal Procedure.[6]

---

3.   Section 1 provides,

"That all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness."

Ala. Const. Art. I, § 1.

4.   Section 6 provides,

"That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do; and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of

(continued . . .)

17

the county or district in which the
offense was committed; and he shall
not be compelled to give evidence
against himself, nor be deprived of
life, liberty, or property, except by
due process of law; but the
legislature may, by a general law,
provide for a change of venue at the
instance of the defendant in all
prosecutions by indictment, and such
change of venue, on application of the
defendant, may be heard and determined
without the personal presence of the
defendant so applying therefor;
provided, that at the time of the
application for the change of venue,
the defendant is imprisoned in jail or
some legal place of confinement."

Ala. Const. Art. I, § 6.

5.  Section 22 provides,

"That no ex post facto law, nor any
law, impairing the obligations of
contracts, or making any irrevocable
or exclusive grants of special
privileges or immunities, shall be
passed by the legislature; and every
grant or franchise, privilege, or
immunity shall forever remain subject
to revocation, alteration, or
amendment."

Ala. Const. Art. I, § 22.

6.   The relevant part of Rule 26.11 provides,

(continued . . .)

18

First, the proposed judicial procedures facially comply with the Fourteenth Amendment. As discussed above, <u>Bearden</u> and <u>Turner</u> govern the application of the Due Process Clause and Equal Protection Clause to civil-contempt proceedings for indigent parties, and the proposed judicial procedures meet the requirements set out in those two cases.

Second, the procedures facially comply with the Sixth Amendment. Under the Sixth Amendment, an indigent defendant has the right to government-appointed counsel in criminal--but not civil--contempt proceedings. <u>Turner</u>, --- U.S. at ---, 131 S. Ct. at 2516. The court, however, need not speak to the nature of the municipal proceedings in this case. Because the parties' proposed judicial procedures provide for the representation of all

---

> "In no case shall an indigent defendant be incarcerated for inability to pay a fine or court costs or restitution."

Ala. R. Crim. Proc. 26.11.

debtors during compliance and ability-to-pay hearings, they would comply with the Sixth Amendment.

Third, the procedures facially comply with the due process, right to counsel, and any equal-protection principle embodied in Article I, §§ 1, 6, and 22 of the Alabama Constitution for the same reasons they comply with the United States Constitution. As to due process, "[t]he right to due process is guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Sections 6 and 13," and it applies to both criminal and civil cases. Ross Neely Exp., Inc. v. Alabama Dep't of Envtl. Mgmt., 437 So. 2d 82, 84 (Ala. 1983). These clauses have been likened to the Due Process Clause in the federal Constitution. Limestone Cnty. Dep't of Human Res. v. Long, --- So.3d ---, ---, 2014 WL 5394522, at *4 (Ala. Civ. App. 2014) ("[The Alabama] supreme court 'has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution' .... Alabama's constitution

does not afford a state agency any additional right to due process not found in the federal constitution.") (citing Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala. 2002)); Vest v. Vest, 978 So. 2d 759, 763 n.1 (Ala. Civ. App. 2006) ("Alabama courts have likened the due-process provision of Ala. Const. of 1901, Art. 1, § 13, to the Due Process Clause of the Fourteenth Amendment of the United States Constitution."). As discussed above, the proposed procedures facially meet the due-process requirement by providing counsel to indigent debtors and guaranteeing no debtor will go to prison unless she willfully refuses to pay.

Similar to their interpretation of state due-process rights in light of federal due-process rights, Alabama courts have also frequently interpreted the Alabama Constitution's right to counsel in light of the federal right to counsel under the Sixth Amendment. See, e.g., Hill v. Bradford, 565 So. 2d 208, 210 (Ala. 1990); Pinkerton v. State, 395 So. 2d 1080 (Ala. Crim. App. 1980). Because every debtor unable to pay her

fines will be provided counsel under the proposed procedures, the procedures meet the right-to-counsel requirement under the Alabama Constitution.

As to equal protection, there is an open question whether Article I, §§ 1, 6, and 22 of the Alabama Constitution can be read together to establish an equal-protection principle. Hutchins v. DCH Reg'l Med. Ctr., 770 So.2d 49, 59 (Ala. 2000) ("The question whether §§ 1, 6, and 22 of Article I, Constitution of Alabama 1901, combine to guarantee the citizens of Alabama equal protection under the laws remains in dispute."); see also Dyas v. City of Fairhope, 2010 WL 5477754 (S.D. Ala. 2010) (Steele, C.J.) (analyzing past Alabama Supreme Court cases on the issue). Assuming arguendo that these clauses do combine for an equal-protection principle, the court finds that the proposed procedures meet this principle for the same reason the procedures fulfill the requirements of the federal Equal Protection Clause. Cf. State v. Adams, 91 So. 3d 724, 738-41 (Ala. Crim. App. 2010) (holding

Alabama sex-offender law unconstitutional under the federal Equal Protection Clause and the state equal-protection principle because it deprived indigent and homeless, but not wealthy, offenders of liberty based on their poverty).

Last, the procedures facially comply with the requirements of Alabama Rule of Criminal Procedure 26.11.  The rule mandates that, "Incarceration shall not automatically follow the nonpayment of a fine or restitution."  Ala. R. Crim. P. 26.11.  Indeed, a state court may not incarcerate an indigent defendant for the inability to pay a fine.  Id.  To avoid this result, the state court may inquire into the defendant's ability to pay, reduce the debt owed, modify the payment schedule, or release the defendant from the obligation altogether.  Id.  The proposed judicial procedures (which require indigence/ability-to-pay hearings, guarantee of counsel, and exclusion of incarceration as a remedy for indigent defendants) facially conform to this rule.

***

This federal court will, therefore, grant the parties' joint motion for entry of agreed settlement order.  An accompanying judgment will be entered.

DONE, this the 17th day of November, 2014.

___ /s/ Myron H. Thompson____
UNITED STATES DISTRICT JUDGE